IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

WAYNE C. JOHNSON, JR. and
KENNETH A. RUTHERFORD                                                PLAINTIFFS

VS.                                                      CIVIL ACTION NO.: 3:08cv50-P-A

ROBERT MITCHAM                                                        DEFENDANT

## OPINION

The Court has before it the *Plaintiffs' Motion for Summary Judgment* (hereinafter "Motion") to which the Defendant failed to file a timely response pursuant to Fed. R. Civ. P. 56(e)(2). Having considered the Motion and the premises thereto, the Court finds as follows:

Plaintiff Wayne C. Johnson, Jr., is a practicing family medicine physician in Jackson, Mississippi, and Plaintiff Kenneth A. Rutherford is a practicing attorney in Oxford, Mississippi. Rutherford formerly practiced law in Jackson, where Dr. Johnson was a business client. For several years leading up to the events in this case, Defendant Mitcham, a former banker and resident of Little Rock, Arkansas, had acted as a business consultant to Plaintiffs, and by 2004, Mitcham had obtained the trust and confidence of Plaintiffs. During 2004, Mitcham approached Plaintiffs with what he termed "an investment opportunity." In return for Plaintiffs supplying the necessary capital, Mitcham would purchase, renovate and oversee the operations for Plaintiffs of a convenience store in Plumerville, Arkansas, which is 40 miles west of Little Rock on Interstate 40. As Mitcham was aware, Plaintiffs had no prior experience owning or operating convenience stores and did not intend to take any active role in the purchase or operation of the store.

Mitcham represented to Plaintiffs that he had done substantial due diligence on the proposed convenience store. Mitcham represented that the store would be operated by Robert Allan Johnson,

who had previously successfully operated the store location and other convenience stores. Mitcham represented that the store would be profitable within a few months, and that the Plaintiffs' cash investment would be repaid within two years. Plaintiffs were to receive a distribution of two-thirds of the profits of the store after repayment of Plaintiffs' cash investment, with Mitcham receiving the remaining one-third of profits after repayment of the initial investment. The promissory notes signed and/or guaranteed by Plaintiffs to provide additional financing for the store were to be repaid from profits of the store. Mitcham prepared a pro forma for the store which he represented to Plaintiffs was accurate and based on due diligence that Mitcham had personally conducted before recommending the purchase.

Plaintiffs, having had previous successful business experience with Mitcham, reasonably relied upon the representations of Mitcham, including the pro forma, to invest in the convenience store. Without that trust and confidence, and without the above representations of Mitcham, Plaintiffs would not have invested in the convenience store. As will be shown, Mitcham made these promises and misrepresentations to induce the Plaintiffs to place their funds under his control as the manager of their business in order to convert those funds and the company assets to his own use.

Upon the agreement of Plaintiffs to fund the store in 2004, Mitcham acquired the store on behalf of Plaintiffs and began the necessary renovations in order to make the store operational. The store opened in mid-October 2004. During 2004 and early 2005, Mitcham exercised control over all store funds, including Plaintiffs' cash investments, and oversaw the operations of the store. Blaming the accountants that Mitcham claimed to have hired for the store, Mitcham failed to provide any financial reports to Plaintiffs until after the end of 2004. While failing to provide accurate financial information, Mitcham continually represented to Plaintiffs that the store was on budget and

that no additional funds would be required.

After the end of 2004, Plaintiffs obtained financial statements for the store and learned that the true cost of the store had been misrepresented by Mitcham and that the obligations owed by Plaintiffs for the store were substantially greater than had been represented by Mitcham. Substantial additional cash investments were required from Plaintiffs. In early 2005, when Plaintiffs learned of the significant financial difficulties encountered by the store, Plaintiffs promptly terminated Mitcham's association with the store and terminated Mitcham's authority over their funds.

After Mitcham's termination, Plaintiffs learned of numerous occurrences of self-dealing by Mitcham and other actions causing injury to Plaintiffs. Examples of such actions by Mitcham include the following:

1. Making unauthorized payments to himself for dummy invoices and personal expenses out of store funds, including withdrawals of over $4,000.00 at Casino ATM machines from the store's bank account, unauthorized payment of his wife's cell phone bill, and unauthorized payment of Mitcham's personal expenses at convenience stores and elsewhere;

2. Paying money out of store funds to others, such as John Whiting, and to himself as "loans" or other advances without disclosure to or approval of Plaintiffs;

3. Purchasing equipment and materials for personal use, such as a truck and a personal computer, with store funds;

4. Directing business to Defendant's friends and relatives, including his son's insurance agency, at higher costs than could have been obtained elsewhere;

5. Forging Plaintiffs' names on documents related to the store finances;

6. Taking kickbacks from vendors such as Gibson Oil Company for directing the store's business to such vendors at higher prices than were otherwise available to the store.

While engaging in self-dealing activities and other breaches of his duties to Plaintiffs, Mitcham failed to use acceptable management techniques in overseeing the operations of the store, causing the store to lose substantial money. Plaintiffs were required to put up substantial additional capital and were required to sign additional promissory notes to pay for the obligations incurred by Mitcham's acts and omissions with respect to the store.

Plaintiffs reasonably relied upon Mitcham's representations in making their investments in the convenience store. Mitcham's misrepresentations relied on by Plaintiffs were material to Plaintiffs' decision to invest in the store. But for the trust and confidence Plaintiffs had in Mitcham because of their previous experience with him, and but for the representations Mitcham made to them regarding the store, Plaintiffs would not have invested in the store. The Plaintiffs would not have placed their funds and their investment in the hands of Mitcham had they known the pro forma was misleading, that Mitcham intended to convert the company's assets to his own use, and then conceal the accounting information for the business and its transactions. It was not until the Plaintiffs obtained the bank records in this proceeding from financial institutions with which Mitcham made transactions that his conversions of company assets were partially disclosed. To date, Mitcham has not cooperated by accounting for the assets he controlled or converted.

After Mitcham's relationship with the convenience store was terminated, Plaintiffs retained the operator recommended and hired by Mitcham, Robert Allan Johnson, and ultimately sold the store at a loss after Robert Allan Johnson left employment at the store. Plaintiffs suffered severe injuries because of Mitcham's actions and misrepresentations on which Plaintiffs reasonably relied. As demonstrated in the report of the accountant for Plaintiffs' convenience store and Plaintiff's

expert witness, Laura Kinney, CPA, Plaintiffs' actual results from their investment in the store, compared with the projections from Mitcham on which their investment was based, was a loss of $334,000.00.

## Misrepresentations

Mitcham's representations to Plaintiffs, including the pro forma he prepared and presented to Plaintiffs, caused Plaintiffs to entrust their investment funds to Mitcham for use in the convenience store. As noted in the report of Plaintiffs' expert, Laura Kinney, CPA, Mitcham's pro forma representations were completely inaccurate. Mitcham grossly understated the amount of capital required for the renovation and operation of the store. Mitcham represented that the total cash capital required from Plaintiffs would be only $91,214.00. The actual capital required was $322,782.00, more than three times greater than the amount represented. The difference of $231,568.00 is clearly material to Plaintiffs. Mitcham understated the amount necessary for equipment and renovations by $34,000.00. Mitcham represented that the store would make a profit of $118,600.00 per year. In fact, the store lost over $300,000.00 while owned by Plaintiffs.

Mitcham represented to Plaintiffs that they could rely on his pro forma for their investment decision. The pro forma was obviously wrong, and Mitcham knew, or reasonably should have known, that it was wrong when he represented to Plaintiffs that his figures were reliable. Plaintiffs were injured when they invested in the convenience store in reliance on Mitcham's representations.

## Fraud

Under Mississippi law, the elements of fraudulent misrepresentation are a representation, its falsity, its materiality, the speaker's knowledge of its falsity or ignorance of the truth, the speaker's intent that the representation should be acted on by the hearer in a manner reasonably contemplated, the hearer's ignorance of its falsity, the hearer's reliance on its truth and his right to rely thereon, and

hearer's consequent and proximate injury. *Cockerham v. Kerr-McGee Chemical Corp.*, 23 F.3d 101 (5th Cir. 1994). Mitcham's representations to get Plaintiffs to invest in the convenience store, Plaintiffs subsequent investment and the losses suffered by Plaintiffs establish the elements of fraud against Mitcham. Plaintiffs have shown that through his representations he placed himself in control of the Plaintiffs' assets so that he could and then did in fact convert for his own purposes.

## Detrimental Reliance/Equitable Estoppel

Mitcham's representations and actions causing Plaintiffs to invest in the convenience store to their detriment also give rise to a cause of action for detrimental reliance against Mitcham. Equitable estoppel comes into play in situations where a party has changed his or her position in reliance upon the conduct or representation of another and as a result suffers detriment or prejudice caused by the change of position. <u>PMZ Oil Co. v. Lucroy, 449 So.2d 201</u>, 206 (Miss. 1984) (citation omitted). What constitutes laches or equitable estoppel has been held to depend on the facts and circumstances of each particular case. *See Cannada,* 185 So.2d at 651 (discussing laches) and *Bright v. Michel,* <u>242 Miss. 738</u>, 749, <u>137 So.2d 155</u>, 159 (1962) (same, with respect to equitable estoppel). The Court finds that the Plaintiffs reasonably relied upon the defendant's representations, invested in the proposed business, and suffered substantial losses which they would not have suffered but for the defendant's representations. pel). Therefore, a trial court's decision to accept or reject either doctrine will not be disturbed on appeal when the decision's factual findings are supported by substantial evidence. *Cannada,* 185 So.2d at 651.

## Breach of Fiduciary Duty

Under Mississippi law, a fiduciary relationship arises when one party, with the knowledge and consent of the other, places trust and confidence in the other party to act on his behalf with respect to his money and/or business. In *Carter Equipment Co. v. John Deere Indus. Equip. Co.* 681

6

F.2d 386 (5th Cir. 1982), the Fifth Circuit set out the test for a fiduciary relationship under Mississippi law:

> Wherever one person is placed in such a relation to another by the act or consent of that other, or by the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is in such a fiduciary relation with him that he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated.

681 F.2d at 390, quoting *Parker v. Lewis Grocer Co.*, 153 So. 2d 261, 276 (Miss. 1963).

In this case, Mitcham, at his own request, obtained and exercised control over Plaintiffs' investment funds in the convenience store. Therefore, Mitcham became a fiduciary of Plaintiffs with respect to their investment in the convenience store, and Mitcham was obligated to act on their behalf in handling those funds. Mitcham failed to act on Plaintiffs' behalf and breached his fiduciary duties toward them, by misrepresenting and failing to disclose the true facts relative to the business, and thereafter, concealing what had occurred and the self-dealing conversions, he had done and the losses which had occurred.

## Conversion

Mitcham took assets and investment funds belonging to the company and converted those to his own use. The actions of Defendant were willful, wanton, grossly negligent, and were taken with reckless disregard for the rights of Plaintiffs so as to entitle Plaintiffs to punitive damages and attorneys' fees.

## CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED, that summary judgment is hereby entered in favor of the Plaintiffs for actual damages in the amount of $334,000.00. Plaintiffs have agreed to waive punitive damages. The Plaintiffs shall submit their claim for attorney's fees to the Court for its consideration.

This, the 23rd day of September, 2010.

_____
HONORABLE W. ALLEN PEPPER
U.S. DISTRICT COURT

PREPARED BY:

J. Hale Freeland, MSB No. 5525
Freeland Shull, PLLC
405 Galleria Lane, Suite C
Post Office Box 2249
Oxford, Mississippi 38655
(662) 234-1711
(662) 234-1739 - fax
hale@freelandshull.com

COUNSEL FOR PLAINTIFFS